Matter of John O. (Cassandra P.) (2024 NY Slip Op 04420)

Matter of John O. (Cassandra P.)

2024 NY Slip Op 04420

Decided on September 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 12, 2024

CV-22-2046
[*1]In the Matter of John O. and Others, Alleged to be Neglected Children. Otsego County Department of Social Services, Respondent; Cassandra P., Appellant, et al., Respondent.

Calendar Date:August 15, 2024

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Lisa K. Miller, McGraw, for appellant.
Otsego County Department of Social Services, Cooperstown (Monica Carrascoso of counsel), for Otsego County Department of Social Services, respondent.
Christine E. Nicolella, Delanson, attorney for the child.
Bradley J. Rooke, Broadalbin, attorney for the children.

Fisher, J.
Appeal from a modified order of the Family Court of Otsego County (John F. Lambert, J.), entered October 5, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent Cassandra P. (hereinafter the mother) is the mother of three children (two daughters born in 2006 and 2008 [hereinafter the older children] and a son born in 2011 [hereinafter the youngest child]). Robert P. (hereinafter the father) is the biological father of the older children, but not of the youngest child. Pursuant to prior custody orders, the mother had sole legal and physical custody of the youngest child, and the father had joint legal and primary physical custody of the older children, with the mother having certain parenting time on weekends. In September 2020, petitioner received two hotline reports alleging excessive absenteeism from virtual school during the COVID-19 pandemic by all three children. A caseworker for petitioner investigating the reports subsequently learned of a domestic violence incident involving the mother and a boyfriend, and alleged substance abuse by the mother.
In January 2021, petitioner filed a neglect petition against the mother and the father alleging that all three children were neglected due to educational neglect, domestic violence and substance abuse by the mother. Following a fact-finding hearing in August 2021, Family Court issued a decision entered in October 2021 that found the children to be neglected due to educational neglect and exposure to domestic violence by the mother.[FN1] A dispositional hearing was held in December 2021, and Family Court ordered that the youngest child be placed with the maternal grandparents until the next permanency hearing. In March 2022, the grandparents filed a petition for custody of the youngest child. Another hearing was held in August 2022 on multiple article 10 petitions and the grandparents' custody petition, during which the mother ultimately consented to the grandparents having custody of the youngest child. Family Court's order entered in October 2022, labeled as a "modified order of fact-finding and disposition" on the neglect petition, granted permanent custody of the youngest child to the grandparents and terminated the court's supervision. The mother appeals from the modified order, challenging only the finding of neglect.
Initially, contrary to petitioner's contentions, the mother's appeal is properly before us. Although the mother did not take an appeal from the finding of neglect entered in October 2021, her timely appeal of the subsequently issued dispositional order entered in October 2022 "brings up for review the issues raised in the fact-finding decision" (Matter of Tyler I. [Shawn I.], 219 AD3d 1097, 1098 n 3 [3d Dept 2023]; see Matter of Aiden XX. [Jesse XX.], 104 AD3d 1094, 1095 n 3 [3d Dept 2013]). The mother is also an aggrieved party because, even though she is not aggrieved by [*2]the dispositional portion of the order by virtue of her consent granting the grandparents custody of the youngest child, that does not bar her appeal from the part of the order finding neglect after the fact-finding hearing (see Matter of Jack S. [Franklin O.S.], 173 AD3d 1842, 1842 [4th Dept 2019]; Matter of Ariel B. [Christine C.], 85 AD3d 1224, 1224 [3d Dept 2011]). Nor does her consent to the dispositional order render her appeal moot, given the potential impact of a neglect finding in future proceedings against her (see Matter of Nina VV. [Wendy VV.], 216 AD3d 1215, 1215 n 2 [3d Dept 2023]).
Turning to the merits, "to establish neglect, a petitioner must demonstrate, by a preponderance of the evidence, that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired due to the failure of the parent to exercise a minimum degree of care" (Matter of Kaleb LL. [Bradley MM.], 218 AD3d 846, 850 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted]). A claim for educational neglect "may be premised upon a parent's failure to supply a child with an adequate education . . . , so long as the child has been impaired thereby or is in imminent danger of so becoming" (Matter of Jaylin XX. [Jamie YY.], 216 AD3d 1224, 1226 [3d Dept 2023]). An impairment may be inferred "[w]here the number of absences is extreme and the absenteeism continues for an extended time without appropriate action by the parent" (Matter of Regina HH. [Lenore HH.], 79 AD3d 1205, 1205 [3d Dept 2010]). To this point, "unrebutted evidence of excessive school absences is sufficient to establish educational neglect" (Matter of Raquel ZZ. [Angel ZZ.], 216 AD3d 1242, 1244 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). In undertaking our review, "[w]e accord great deference to Family Court's findings and credibility determinations and we will not disturb them, unless they are unsupported by a sound and substantial basis in the record" (Matter of Joseph GG. [Chrystal FF.], 227 AD3d 1238, 1239 [3d Dept 2024] [internal quotation marks and citations omitted]).
Here, the certified educational records stipulated into evidence at the fact-finding hearing revealed that, for the time period between September 2020 through December 2020, each child had at least 31 unexcused absences; the oldest child had 42 unexcused absences and was failing school.[FN2] Notes from the children's teachers generally indicated that each child's absenteeism was affecting their grades, and specifically that the youngest child struggled to keep up with grade-level understanding of various topics "due to his extreme absenteeism." The mother largely attributed the youngest child's absences to his ADHD diagnosis; she testified that, even when he took his medication, she was unable to maintain his attention for virtual classes on his laptop. For the older children, the mother testified that she would have to walk over to the [*3]father's residence a few doors down to get them logged onto their computers and monitor them. However, the mother contended that she could not sit with all three children and monitor them because they would fight, meaning that she would need to go between her residence with the youngest child and walk to the father's residence where the older children were supposed to be logged onto their computers. Although the mother testified as to other efforts she had made, a caseworker for petitioner testified that the mother had only indicated to her that she would call the older children to make sure they were awake and logged on but did not outline what further steps she would take to ensure their attendance. According to the caseworker, the school had exhausted its options trying to get the children to attend virtual classes with minimal cooperation from the mother. Notably, the mother conceded during the fact-finding hearing that she was not working at the time and that nothing else prevented her from ensuring the children were logged on for school; she offered no excuse for the children's significant absences. Based on the foregoing, when deferring to Family Court's factual findings and credibility determinations, we conclude that there is a sound and substantial basis in the record to support the educational neglect finding against the mother (see Matter of Joseph GG. [Chrystal FF.], 227 AD3d at 1240-1241; Matter of Raquel ZZ. [Angel ZZ.], 216 AD3d at 1245; Matter of Jaylin XX. [Jamie YY.], 216 AD3d at 1227-1228; Matter of Regina HH. [Lenore HH.], 79 AD3d at 1205-1206).
We reach a different conclusion as to the finding of neglect against the mother based on exposing the children to domestic violence. The record makes it clear that there was an altercation between the mother and her boyfriend that resulted in personal injuries to both of them — including a stab wound to the boyfriend. Although "even a single act of domestic violence may be sufficient to establish neglect if the child[ren are] present for such violence and [are] visibly upset and frightened by it" (Matter of R.E. [S.F.], 212 AD3d 1009, 1010 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1077 [3d Dept 2022], lv denied 38 NY3d 912 [2022]), the record demonstrates that the incident occurred in a private vehicle and the children were not present. The mother further testified that there were never any incidents of domestic violence perpetrated in the presence of the children and, when her disagreements with the boyfriend began to escalate, the children were either sleeping or he would leave the premises. Despite the caseworker's testimony that the children were generally aware of arguments between the mother and the boyfriend, she failed to offer any testimony as to the impact such arguments had on the children's physical, mental or emotional conditions, or whether such exposure placed the children at imminent [*4]risk of impairment (see Matter of Lexie CC. [Liane CC.], 190 AD3d 1165, 1166 [3d Dept 2021]; Matter of Scott QQ. v Stephanie RR., 75 AD3d 798, 799-800 [3d Dept 2010]). Therefore, since there is not a sound and substantial basis in the record to sustain the finding of neglect against the mother for exposing the children to domestic violence, we reverse that portion of Family Court's order and dismiss such claim in the petition. We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Egan Jr., Clark and McShan, JJ., concur.
ORDERED that the modified order is modified, without costs, by reversing so much thereof as found neglect based on allegations of domestic violence; and, as so modified, affirmed.

Footnotes

Footnote 1: Such finding was not against the father, who had been granted an adjournment in contemplation of dismissal before the fact-finding hearing.

Footnote 2: We reject the contentions by the mother and the appellate attorney for the older children that Family Court erred in admitting certain evidence or testimony relating to the children's educational records, as the mother stipulated such records into evidence and did not otherwise raise an objection, and therefore such claims are unpreserved (see Matter of Elaysia GG. [Amber HH.], 221 AD3d 1338, 1340 n [3d Dept 2023]). Regardless, inasmuch as the testimony from the caseworkers is supported by certified school records prepared in the ordinary course of business, the records are otherwise admissible (see Matter of Samantha K., 61 AD3d 1322, 1323-1324 [3d Dept 2009]; compare Matter of Abel XX. [Jennifer XX.], 182 AD3d 632, 634 n 1 [3d Dept 2020]).